**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| In re:<br>CAH ACQUISITION COMPANY 11, LLC,<br><br>                    Debtor. | Chapter 11<br>Case No. 19-22020-pjd |
| CAH ACQUISITION COMPANY 11, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>ALEX M. AXAR, II, SECRETARY OF U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and SEEMA VERMA, ADMINISTRATOR OF CENTERS FOR MEDICARE AND MEDICAID SERVICES<br><br>                    Defendants. | Adversary Proceeding No. _____ |

**COMPLAINT FOR DETERMINATION OF APPLICABILITY OF, AND VIOLATION OF, AUTOMATIC STAY AND INJUNCTIVE RELIEF PURSUANT TO 11 U.S.C. § 105(A)**

COMES NOW Plaintiff, CAH Acquisition Company 11, LLC, the above-named chapter 11 debtor-in-possession ("Debtor," or "CAH" or "Lauderdale") and files this Complaint for (1) an order finding that the automatic stay is imposed by Section 362(a) of the Bankruptcy Code, (2) an order finding Defendants willfully violated the automatic stay, and (3) injunctive relief pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 7001(7), against Alex M. Axar, Secretary of U.S. Department of Health and Human Services ("HHS") and Seema Verma, Administrator of Centers for Medicare and Medicaid Services ("CMS") (collectively, "Defendants").

**SUMMARY OF ACTION**

1. Lauderdale owns and operates the critical access hospital that serves Lauderdale County and other neighboring counties in Western Tennessee.

2. In filing this adversary proceeding, Lauderdale seeks a determination of the applicability of automatic stay imposed pursuant to Section 362(a) of the Bankruptcy Code (the "Automatic Stay") as to Defendants, and a finding that the Defendants in the actions taken against Lauderdale after the filing of the petition herein are in violation of the Automatic Stay. Lauderdale further brings this adversary proceeding pursuant to Fed. R. Bankr. P. 7001 and Section 105(a) of the Bankruptcy Code seeking injunctive relief to stay any further action against Lauderdale or property of the estate, and to enjoin any actions currently pending or which may be filed by Defendants, pursuant to Section 105 of the Bankruptcy Code during the pendency of Lauderdale's Chapter 11 case.

3. This adversary complaint does not challenge the merits of Defendants' recent determination of alleged 2015 Medicare overpayments made to CAH years before its bankruptcy filing, which CAH will separately pursuing through an administrative appeal under the Medicare statute. Rather, this action solely relates to CAH's guaranteed protections under the automatic stay and preserving the value of its bankruptcy estate for a limited time so that Lauderdale can continue to maintain its operations, pay its employees and sell its business as a going concern for the benefit of all stakeholders and the community of Lauderdale County, Tennessee. Continuation of any action by Defendants outside of bankruptcy case threatens to harm the Lauderdale's estate and imperil its ability to reorganize.

4. Lauderdale is on the verge an expedited sale process in chapter 11 that will maintain the going concern value of the company, preserve almost one hundred jobs, and allow Lauderdale to continue providing important healthcare services to an in-need rural community.

5. The success of Lauderdale's restructuring efforts is contingent upon the Court enforcing the most fundamental of all protections provided under the Bankruptcy Code—the automatic stay—against Defendants to prevent any post-petition suspension or withholding of Medicare payments to Lauderdale through the duration of this chapter 11 case.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(b)(1) and 1334, 11 U.S.C. §§ 105(a) and 362, and Fed. R. Bankr. P. 7001(7).

7. Venue is proper in this District and Court pursuant to 28 U.S.C. § 1409(a) on account of Lauderdale's bankruptcy case under Chapter 11 of the Bankruptcy Code.

8. This adversary proceeding constitutes a core proceeding within the meaning of one or more sub-sections of 28 U.S.C. § 157(b).

## BACKGROUND

9. CAH is a Delaware limited liability company with a principal place of business in Ripley, Tennessee.

10. Defendant Alex M. Azar II is the Secretary of HHS and is responsible for the conduct and policies of HHS, including those relating to CMS, an agency within HHS, and CMS's role in making Medicare payments. The Secretary maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in his official capacity only.

11. Defendant Seema Verma is the Administrator of CMS and is responsible for the conduct and policies of CMS and its role in making Medicare payments. The Administrator maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in her official capacity only.

12. On March 8, 2019 (the "Petition Date"), Lauderdale filed a voluntary petition for relief, thereby commencing this case under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Tennessee (the "Court"). Lauderdale continues to operate its business and manage its property as debtor in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

13. Debtor owns and operates Lauderdale Community Hospital at 326 Ashbury Avenue, Ripley, Tennessee 38063. Debtor is a critical access hospital that serves Lauderdale County, Tennessee and the surrounding rural counties.

14. Prior to the Petition Date, Stone Bank filed a civil action against CAH on or about January 8, 2019 in the Chancery Court of Lauderdale County, Tennessee (Case No. 15859) (the "Civil Action"), and subsequently, on January 14, 2019, CAH removed the Civil Action to the U.S. District Court for the Western District of Tennessee (Case No. 19-02040).

15. At the time of the removal, Stone Bank had pending requests in state court for the appointment of a receiver and other injunctive relief. Stone Bank had been, at the time of removal, granted a Temporary Restraining Order ("TRO") by the Chancery Court. The District Court extended the TRO until the entry of a subsequent order which appointed Marianna Williams Special Master, and as Special Master was directed to obtain, review and evaluate the financial records and operations of Lauderdale (hereinafter the "Collateral") and make a report to the District Court of her findings by the close of business on February 18, 2019.

16. A final hearing was held on February 21, 2019 to determine whether to grant Stone Bank's request for the appointment of a receiver. The District Court found that there were sufficient grounds for the appointment of a receiver, and the Court orally granted the Motion for Appointment of Marianna Williams ("Ms. Williams").

17. The Court entered the Order Appointing Receiver and Granting Related Injunctive Relief on February 27, 2019 (the "Receiver Order"). *See* Exhibit A.

18. The Receiver Order also provided that Ms. Williams "shall have the power to place [CAH] into voluntary bankruptcy, subject to the approval of the Court." *See* Receiver Order, ¶ 9.

19. On March 6, 2019, an Expedited Motion for Authority to File Bankruptcy was filed with the District Court, seeking approval to allow Ms. Williams to file a petition for relief under the Bankruptcy Code.

20. On March 7, 2019, the District Court granted Ms. Williams's Motion for Authority to file Bankruptcy, thereby giving Ms. Williams the authority to file the above-styled bankruptcy case. Subsequently, on or about March 13, 2019, the District Court clarified its March 7, 2019 order and specifically granted Ms. Williams "all rights, powers and duties of debtor-in-possession under 11 U.S.C. § 1107 and that [Ms. Williams be] authorized to not only administer the assets of CAH Acquisition Company 11, LLC but also to act for and on behalf of CAH Acquisition Company [11], LLC." *See* Exhibit B.

21. Since her appointment over Lauderdale's assets, Ms. Williams has become familiar with the business of Lauderdale. Former managers and owners of the hospitals have been absent during the reorganizing process well underway in Lauderdale County.

22. Community leaders, state regulators (TennCare) and community members have been very involved in every step of Lauderdale's progress. This includes local Mayors, councilmen, employees, doctors, representatives from Lauderdale's secured creditor, Stone Bank (an Arkansas state bank), and numerous creditors. Initiatives have been taken by Lauderdale to have regular calls with the State of Tennessee regulators to ensure compliance and regulatory

concerns are addressed weekly (which in turn has allowed Lauderdale lots of leeway because of the community effort). Defendants

23. Since Ms. Williams involvement, Lauderdale employees (administrative and nursing) have been paid in full, and Ms. Williams has negotiated with doctors to come back to work. Ms. Williams has negotiated with critical vendors who are supplying goods and services to Lauderdale again. Ms. Williams and the effort of all local community leaders, local employees, local doctors, and the State of Tennessee have banded together and successfully reopened the Lauderdale Community Hospital emergency room (April 2, 2019) and surgery department (June 10, 2019).

24. Since Lauderdale Community Hospital reopened, it has seen a steady increase in patients. The average daily census went from five (5) patients in May and June to nine (9) patients in July and twelve (12) patients in August. In July that census included eleven (11) inpatients, thirteen (13) swing bed patients and twenty-one (21) observations. In addition, in July, seven hundred thirty-six (736) outpatient visits and nineteen (19) outpatient surgeries.[1]

25. While great efforts have been made by local leaders to save this hospital, it is still not receiving payments from Medicare due to offsets for prior overpayments including a recent assessment of one million one hundred thousand dollars ($1,100,000) as a result of unsubstantiated expenses on a cost report submitted in **2015**.

26. Due to the events leading up to this bankruptcy, and the complete lack of corporation by former management, Lauderdale along with the ten (10) remaining CAH entities have entered into a joint agreement which will give each hospital access to patient and billing data maintained by the previous management companies (i.e. prior to March 2019). This

---

[1] Seven hundred seventy-four (774) people were treated in the emergency room in June.

includes necessary information to rebut Medicare's recent assessment relating to the 2015 cost report. As of the filing of this Complaint, Lauderdale still does not have the necessary data; and therefore, must seek emergency relief from this Court in order for it to remain operational.

27. To date, Stone Bank and Cohesive Healthcare Management have assisted Lauderdale with funds to cover payrolls while Lauderdale attempts to remedy this situation.

28. Federal regulations permit CMS to suspend, offset and recoup Medicare payments to providers for a number of reasons, including where "a credible allegation of fraud exists against a provider or supplier, unless there is good cause not to suspend payments." 42 C.F.R. § 405.371(a).

29. When CMS decides to suspend Medicare payments, the provider has the right to rebut the bases of the suspension. *See* 42 C.F.R. § 405.372(b)(2). Once a provider provides a rebuttal statement, CMS must, "within 15 days . . . consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment." 42 C.F.R. § 405.375(a). This decision is not appealable. 42 C.F.R. § 405.375(c).

30. In addition, "all suspensions of payment in accordance with § 405.371(a)(2) will be temporary and will not continue after the resolution of an investigation, unless a suspension is warranted because of reliable evidence of an overpayment or that the payments to be made may not be correct, as specified in § 405.371(a)(1)." 42 C.F.R. § 405.372(d)(3)(ii).

31. Unless the suspension is otherwise lifted, CMS must ultimately determine whether the claims reviewed are payable, whether an overpayment exists and the amount of such overpayment, if any. *See* 42 C.F.R. § 405.372(c). If CMS intends to exercise recoupment rights

for an overpayment determination, they must afford the provider an opportunity for rebuttal. *See* 42 C.F.R. § 405.372.

32. The provider agreement, and all of Lauderdale's rights thereunder, is property of Lauderdale's estate. *See* 11 U.S.C. § 541(a).

33. Since the filing of Lauderdale's bankruptcy petition, CMS appears to have suspended and continues to withhold all Medicare reimbursement payments due to Lauderdale, which comprise a significant amount of Lauderdale's revenue. Upon information and belief, the initial suspension was related to unsubstantiated expenses on CAH's 2015 cost report. Given the initial condition of the facility and Ms. Williams' inability to acquire (despite best efforts) books and records relating to the 2015 cost report, she was left with no alternative but to attempt to enter into an Extended Repayment Schedule ("ERS") with the ability to appeal CMS's determination of Medicare overpayments relating to the 2015 cost report once she is able to access relevant records.

34. Despite imposing these severe financial penalties, Defendants have never attempted to terminate Lauderdale's participation in Medicare. As a result, Lauderdale continues to provide critical healthcare services to Medicare beneficiaries without reimbursement. Defendants' conduct is not designed to protect the public health, safety and welfare under the Medicare statute, but rather to protect its pecuniary interest and collect, setoff and recoup amounts Defendants claim to be owed ahead of all other creditors in this bankruptcy case.

35. It appears despite entering into ERS, CMS continues to suspend payments to Lauderdale. CMS's suspension has forced Lauderdale to seek deferred debt service and emergency funding. Yet, Lauderdale continues providing health care services to Medicare

beneficiaries throughout which its financial condition continues to deteriorate because CMS refuses to make any payments to Lauderdale.

36. Despite numerous requests that CMS lift any suspension based on financial hardship, CMS continues to hold all money owing to Lauderdale.

## DETERMINATION OF APPLICABILITY OF AUTOMATIC STAY

37. Lauderdale repeats and re-alleges the allegations contained in paragraphs 1 - 36 of this Complaint as if fully set forth herein.

38. The automatic stay of 11 U.S.C. § 362 of the Bankruptcy Code operates as a stay of, among other things, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title; ... any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate...."

39. The scope of the automatic stay is broad and "[i]t stops all collection efforts, [and] all harassment...." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978); *Smith v. First Am. Bank (In re Smith)*, 876 F.2d 524, 526 (6th Cir. 1989). "It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy." *Webb Mtn, LLC, v. Exec. Realty P'ship, L.P. (In re Webb Mtn., LLC)*, 414 B.R. 308, 335 (Bankr. E.D. Tenn. 2009). The stay of an act against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The stay of any other act continues until the case is closed, dismissed, or discharged, whichever is earliest. 11 U.S.C. § 362(c).

40. Lauderdale's right to receive Medicare payments from CMS for services it performs for Medicare beneficiaries is property of the estate under Section 541(a) of the Bankruptcy Code. *See* 11 U.S.C. § 541(a).

41. Post-Petition, and prior to refusing to release any Medicare payments, Defendants did not seek relief from the automatic stay to hold funds or to exercise setoff of funds belonging to Lauderdale.

42. CMS's suspension and/or withholding of Medicare payments due to Lauderdale after the Petition Date is a violation of the automatic stay under 11 U.S.C. §§ 362(a)(1), (3), (6) and (7) in that it is: (a) an action or proceeding to recover a claim against Lauderdale for prepetition Medicare overpayments; (b) an act to obtain possession or exercise control over property of the estate; (c) an act to collect, assess or recover a claim against Lauderdale for alleged Medicare overpayments that occurred prior to the Petition Date; and (d) an attempt to setoff against alleged Medicare overpayments that occurred prior to the Petition Date.

43. CMS's suspension and/or withholding of Medicare payments due to Lauderdale is not the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power" under 11 U.S.C. § 362(b)(4).

44. CMS's actions in suspending and withholding all Medicare payments to Lauderdale has caused real and significant harm to its estate.

45. If CMS is allowed to continue to suspend or withhold Medicare payments to Lauderdale, then its estate and creditors will suffer the loss of significant estate assets and it will jeopardize Lauderdale's ability to continue operating as a going concern.

46. Accordingly, Lauderdale respectfully requests that the Court enter a declaratory judgment that (i) Lauderdale's right to receive Medicare payments is property of the estate under 11 U.S.C. § 541(a); (ii) Defendants' suspension and/or withholding of any Medicare payments to Lauderdale is an action or proceeding to recover a claim against Lauderdale for pre-petition

Medicare overpayments prohibited by 11 U.S.C. § 362(a)(1); (iii) Defendants' suspension and/or withholding of any Medicare payments to Lauderdale is an act to obtain possession or control over property of the estate prohibited by 11 U.S.C. § 362(a)(3); (iv) Defendants' suspension and/or withholding of any Medicare payments to Lauderdale is an act to collect, assess or recover a claim against Lauderdale for alleged Medicare overpayments that occurred prior to the Petition Date prohibited by 11 U.S.C. § 362(a)(6); (v) Defendants' suspension and/or withholding of any Medicare payments to Lauderdale is an attempt to setoff against alleged Medicare overpayments that occurred prior to the Petition Date prohibited by 11 U.S.C. § 362(a)(7); (vi) Defendants' suspension or withholding of any Medicare payments to Lauderdale is not an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4); and (vii) Defendants may not suspend or withhold any Medicare payments to Lauderdale after the Petition Date.

## **VIOLATION OF AUTOMATIC STAY**

47. Lauderdale repeats and re-alleges the allegations contained in paragraphs 1 - 46 of this Complaint as if fully set forth herein.

48. Defendants willfully violated the automatic stay by suspending and withholding Medicare payments to Lauderdale after the Petition Date.

49. Said suspension and withholding of any Medicare payments to Lauderdale after the Petition is an action or proceeding to recover a claim against Lauderdale for pre-petition Medicare overpayments that violates the automatic stay under 11 U.S.C. § 362(a)(1), (3), (6) and (7). *See* 11 U.S.C. §§ 362(1), (3), (6) and (7) and 541(a)(1); *see also In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989) ("The automatic stay is effective upon the date of the filing of the petition . . . and formal service of process will not be required.").

50. While 11 U.S.C. § 362(k) applies to individual debtors, Courts have imposed sanctions against parties violating the automatic stay under 11 U.S.C. § 105(a). *In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir. 1990); *see Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51, 57 (2d Cir.1976) (allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[ ]" disregard of bankruptcy rules regarding requirements for relief); *Drywall Tapers, Local 1974 v. Local 530,* 889 F.2d 389, 394-95 (2d Cir. 1989) (knowledge of violation and terms of injunction required to hold party in civil contempt); *see also In re First RepublicBank Corp.,* 113 B.R. 277, 279 (N.D. Tex. 1989) (recognizing power of bankruptcy court under § 105 of the code and Bankruptcy Rule 9020 to impose contempt sanctions for violations of automatic stay); *In re Brilliant Glass, Inc.,* 99 B.R. 16, 18 (Bankr. C.D. Cal. 1988) (finding contempt an appropriate remedy for violation of the automatic stay where § 362(h) by its words only benefits individual debtors).

51. Relief under Section 105 of the Bankruptcy Code is particularly appropriate in a Chapter 11 case to protect a debtor's ability to effectively confirm a restructuring plan and to preserve the property of Lauderdale's estate.

52. Lauderdale seeks sanctions and an injunction precluding Defendants or any other attorneys or agents acting on Defendants' behalf from (1) continuing any further action against Lauderdale or property of the estate or (2) pursuing any new action against Lauderdale or property of the estate.

**CLAIM FOR INJUNCTIVE RELIEF UNDER 11 U.S.C. § 105(a)**

53. Lauderdale repeats and re-alleges the allegations contained in paragraphs 1 - 52 of this Complaint as if fully set forth herein.

54. Lauderdale seeks injunctive relief to stay any further action against Lauderdale or property of the estate, and to enjoin any actions currently pending or which may be filed by Defendant, pursuant to Section 105(a) of the Bankruptcy Code during the pendency of Lauderdale's Chapter 11 case.

55. Section 105(a) of the Bankruptcy Code authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[2]

56. Relief under Section 105 of the Bankruptcy Code is particularly appropriate in a Chapter 11 case when necessary to protect a debtor's ability to effectively confirm a restructuring plan and to preserve the property of debtor's estate.

57. The continuation of any action by Defendants severally handicaps Lauderdale's ability to continue to operate. All creditors will be severally damaged if Lauderdale does not remain a going concern which can be transferred to a third party operator.

58. For the reasons stated herein, this Court should apply Section 105 of the Bankruptcy Code and stay any further action by Defendants, and to enjoin any continued actions by Defendants because the continuation of any action will frustrate and jeopardize the Lauderdale's efforts to successfully restructure and will interfere with its restructuring efforts.

59. The likelihood of irreparable harm to Lauderdale in the absence of injunctive relief far out weights any harm to Defendants.

---

[2] If Court determines that an exception to the automatic stay applies and that, therefore, an action against the debtor or its property may proceed, "debtors are not left without an avenue for relief if they or the estate would be harmed.... The bankruptcy court has" 'ample other powers' "to stay such an action, including the discretionary power under 11 U.S.C. § 105(a) to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' " *United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 527 (8th Cir.1990) (quoting *Missouri v. Bankruptcy Court for the E.D. of Ark.*, 647 F.2d 768, 776 n. 14 (8th Cir.1981), and citing *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 297 (6th Cir.1988)).

60.   If Defendants are not enjoined, Lauderdale will likely suffer harm and its restructuring efforts will be threatened by among other things, having no cash flow for operations.

61.   The injunctive relief sought by Lauderdale is necessary and proper in order to allow Lauderdale to restructure, and to provide it with an unobstructed opportunity to get its plan confirmed (or proceed to a successful Section 363 sale) in accordance with the applicable provisions of the Bankruptcy Code.

62.   The public's interest weighs in favor of the issuance of injunctive relief. Lauderdale provides an essential service by caring for rural community patients and without cash flow, Lauderdale will have no ability to continue to pay for necessary supplies, doctors and employees.

WHEREFORE, based upon the foregoing, Lauderdale respectfully prays for an Order (1) finding that the automatic stay is imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code, (2) finding Defendants or any other attorneys or agents acting on Defendants' behalf willfully violated the automatic stay, (3) granting Lauderdale damages, both general and specific, which the Court deems proper for Defendants' willful violation of the automatic stay, (4) enjoining Defendants from either proceeding with or instituting any action against Lauderdale or property of the estate during the pendency of Lauderdale's Chapter 11 case, and (5) for such other and further relief both general and specific, which this Court deems proper.

Respectfully Submitted,

/s/ *M. Ruthie Hagan*
M. Ruthie Hagan (TNB # 026839)
E. Franklin Childress, Jr. (TNB # 007040)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-0863
Email: fchildress@bakerdonelson.com

***Attorneys for CAH Acquisition 11, LLC***