**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

In re:

CAH ACQUISITION COMPANY 11, LLC,
d/b/a LAUDERDALE COMMUNITY
HOSPITAL

              DEBTOR.

Case No. 19-22020 DSK

Chapter 11

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (B) AUTHORIZING DEBTOR'S ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS AND APPROVING DEBTOR'S REJECTION OF THOSE UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED AND ASSIGNED PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (C) APPROVING BID AND SALE PROCEDURES; (D) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (E) GRANTING RELATED RELIEF**

CAH Acquisition Company 11, LLC, d/b/a Lauderdale Community Hospital (the "Debtor" or "Lauderdale"), in its capacity as debtor and debtor-in-possession files this motion (the "Sale Motion") for the entry of an order (the "Sale Order") pursuant to 11 U.S.C. §§ 102, 105, 363, and 365, and Fed. R. Bankr. P. 2002, 6004, 6006, 9006 and 9007 (a) authorizing the sale of assets free and clear of all liens, interests, claims and encumbrances (the "Sale"); (b) approving the assumption and assignment, or rejection, of certain executory contracts and unexpired leases; (c) approving bid and sale procedures (the "Bidding Procedures"); (d) waiving the 14-day stay periods set forth in Fed. R. Bankr. P. 6004(h) and 6006(d); and (e) granting related relief.

In further support of this Sale Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Western District of Tennessee (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent to the entry of a final order by the Court in connection with the Sale Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On March 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Court.

5.      The factual background of the Debtor, including its business operations, and the events leading up to the filing of this Chapter 11 case, is set forth in the *Declaration of Marianna Williams in Support of the First Day Motions* (the "Williams Declaration"), which was filed with the Court on March 12, 2019 [Doc. No. 11] and is fully incorporated herein by reference.

6.      The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  As of the date of this filing, no trustee or examiner has been requested in this Chapter 11 case, and no committee of unsecured creditors has yet been appointed.

EFC 4830-4950-5228
2947847-000001

7. Prior to the Petition Date, the Debtor owned and operated the Lauderdale Community Hospital, a critical access hospital located in Ripley, Tennessee.

8. Since the Petition Date, the Debtor has worked diligently toward providing continued healthcare treatment and services by the Lauderdale Community Hospital to the citizens of Lauderdale County, Tennessee and surrounding counties.

9. Prior to filing the above-styled bankruptcy petition, Stone Bank filed a civil action against the Debtor on or about January 8, 2019 in the Chancery Court of Lauderdale County, Tennessee (Case No. 15859) (the "Civil Action"). Subsequently, on January 14, 2019, the Debtor removed the Civil Action to the U.S. District Court for Western District of Tennessee (Case No. 19-02040).

10. At the time of removal, Stone Bank had pending requests in state court for the appointment of a receiver and other injunctive relief. Stone Bank had been, at the time of removal, granted a Temporary Restraining Order ("TRO") by the Chancery Court. The District Court extended the TRO until the entry of a subsequent order which appointed Marianna Williams, Special Master, and as Special Master she was directed to obtain, review and evaluate the financial records and operations of the Debtor and make a report to the District Court of her findings by the close of business on February 18, 2019.

11. A final hearing was held on February 21, 2019 to determine whether to grant Stone Bank's request for the appointment of a receiver. The District Court found that there were sufficient grounds for the appointment of a receiver for the Debtor, and the Court orally granted the Motion for Appointment of Marianna Williams.

12. The Court entered the Order Appointing Receiver and Granting Related Injunctive Relief on February 27, 2019 (the "Receiver Order"). [District Court Doc. No.15-2]

EFC 4830-4950-5228
2947847-000001

13.     With Receiver Order, the District Court issued a stay of all acts, actions or proceedings to obtain possession of, exercise control over, or enforce a judgment against receivership property and to enforce a lien against receivership property to the extent the lien secures a claim against Debtor. The stay applied to any judgment creditor seeking to enforce a judgment against any funds in Debtor's account(s).

14.     The Receiver Order also provided that Ms. Williams "shall have the power to place [Debtor] into voluntary bankruptcy, subject to the approval of the Court." *See* Receiver Order, District Court Doc. No.15-1, ¶ 9.

15.     On March 6, 2019, an Expedited Motion for Authority to File Bankruptcy was filed with the District Court, seeking approval to allow Ms. Williams to file a petition for relief under the Bankruptcy Code.

16.     On March 7, 2019, the District Court granted Ms. Williams's Motion for Authority to file Bankruptcy, thereby giving Ms. Williams the authority to file the instant case. [District Court Doc. No.15-2]

17.     Subsequently, on or about March 13, 2019, the District Court clarified its March 7, 2019 order and specifically granted Ms. Williams "all rights, powers and duties of debtor-in-possession under 11 U.S.C. § 1107 and that [Ms. Williams be] authorized to not only administer the assets of CAH Acquisition Company 11, LLC but also to act for and on behalf of CAH Acquisition Company [11], LLC."

18.     Since her appointment over the Debtor's assets, Ms. Williams has become familiar with the business of the Debtor.

19.     The Debtor's objectives in this case have been to stabilize the operations of Lauderdale Community Hospital and to sell the assets as a going concern to preserve the value of

the facility for the community as a critical access hospital.  As of the filing of the Sale Motion, the operations of the hospital have in fact been stabilized.

20.    As a part of efforts to stabilize the operations of Lauderdale Community Hospital, a management agreement was negotiated with Cohesive Healthcare Management + Consulting, LLC ("Cohesive").  Since the execution of the management agreement, Cohesive has handled the day to day management of the hospital.

21.    Since the Petition Date, the Debtor, under the guidance and supervision of Ms. Williams has performed required duties under the Bankruptcy Code attentively and in good faith. Despite the significant issues that existed at the time of the filing, the Debtor has made tremendous strides in achieving the goals of stabilizing the operations of the Debtor and marketing the assets of the Bankruptcy Estate.  Among other things to date, the Debtor:

- Obtained Court approval of an agreement with Stone Bank for the use of cash collateral and for adequate protection and in addition, Stone Bank providing post-petition financing in the aggregate amount of $1,350,000.00 (the "Post-Petition Financing"). [*See* Doc. Nos. 99, 164, 165, and 166];

- Filed a motion and obtained an order pursuant to Section 365 of the Bankruptcy Code providing for the rejection of the IT Help Desk Support and Daily Backup Services Agreement with iHealthcare Software Services, Inc., along with the Management and Administrative Services Agreement and the EHR and RCM Services Agreement with iHealthcare Management II Company. [See Doc. Nos. 67 and 118].  The parties to these executory contracts were in default and were a contributing source to the financial issues facing the Debtor as of the Petition Date;

- Filed Schedules and Statements of Financial Affairs despite facing numerous obstacles in obtaining the necessary information for the filing thereof;

- Completed the First Meeting of Creditors;

- Filed Monthly Operating Reports;

- Successfully opposed a Motion to Transfer Venue of the Bankruptcy Case to the Eastern District of North Carolina;

- Negotiated numerous vendor agreements in order to stabilize the operations of the Debtor;

5

- Re-established working relationships with state and federal regulatory authorities;

- Obtained an agreement with other CAH Acquisition facilities to regain possession of records removed by the ownership group of the Debtor and other CAH Acquisition facilities;

- Assembled due diligence materials to provide to parties interested in the purchase of the assets of the Debtor;

- With the assistance and support of Stone Bank instituted a renewed marketing campaign for the sale of the assets of the Debtor;

- Obtained a grant from TennCare; and

- Received stimulus funds through the United States Department of Health and Human Services under the Coronavirus Aid Relief and Economic Security Act (the "CARES Act").

22.    The Debtor asserts that, given the nature of the hospital industry and the status of current operations that it is imperative to promptly seek a sale of substantially all of its assets.

23.    The Debtor proposes to effectuate a sale of the assets of Lauderdale Community Hospital pursuant to certain bidding and sale procedures (defined below) as authorized by the Court.

24.    The Debtor received a stalking-horse bid (the "Stalking Horse Bid") in the form of an Asset Purchase and Sale Agreement (the "Proposed APA")[1] from Lauderdale Community Hospital LLC, a Tennessee limited liability company (the "Proposed Buyer") to purchase certain assets (the "Acquired Assets") as that term is defined in the Proposed APA for a cash purchase price of $8,000,000 at closing plus assumption of the Assumed Liabilities[2] (the "Proposed Purchase Price"). The Proposed Purchase Price will be funded by the Proposed Buyer through a combination of cash funded directly by the Proposed Buyer and the Buyer's Financing. A copy of the Proposed APA is attached hereto, incorporated herein, and identified as **Exhibit A**.

---

[1] Exhibits, attachments and schedules to the Proposed APA which are not attached to Exhibit A will be provided upon written request to the undersigned counsel as they are available.
[2] Defined terms not otherwise defined herein shall have the meanings as set forth in the Proposed APA.

EFC 4830-4950-5228
2947847-000001

25.    The Proposed APA provides for, among other things, the Sale of the Acquired Assets free and clear of any and all liens, claims, encumbrances, and other interests, along with the assumption of certain executory contracts and unexpired leases (the "Transaction").

26.    The Acquired Assets constitute substantially all of the Debtor's assets, but do not include estate causes of action.[3]

27.    The Acquired Assets includes the rights to receive the remaining proceeds (the "Unused Funds") of the CARES Act Provider Relief Funds as of the Closing if allowable by order of the Bankruptcy Court and/or agreement with the United States Department of Human Services.

28.    In connection with maximizing the value of the Debtor's estate, the Debtor seeks to establish reasonable bid and sales procedures in order to solicit higher and better cash offers for the Acquired Assets and to provide for an auction, if necessary. To that end, the Debtor requests entry of an order establishing bidding procedures in substantially the form attached hereto as **Exhibit B**[4] and an order authorizing the Sale of the Purchased Assets to Lauderdale Community Hospital LLC or such other party (or parties) that may submit a higher and better offer for the Acquired Assets (the "Sale Order") to the Proposed APA as Exhibit 1.

29.    Additionally, in connection with the Bidding Procedures, the Debtor seeks this Court's approval of the form and manner of notices to be provided to counterparties to potentially assumed and assigned executory contracts or unexpired leases, which shall include the amounts that the Debtor believes is necessary to cure any defaults thereunder.

30.    The Debtor believes that the procedures proposed herein should be approved because they are reasonable under the circumstances, will help enhance any likelihood of

---

[3] Any Causes of Action under Chapter 5 of the Bankruptcy Code.

[4] In the event of any inconsistency between the Bidding Procedures provided in this Sale Motion and the proposed Bidding Procedures Order, the Bidding Procedures Order shall govern.

generating higher bids for the Acquired Assets, and are thus in the best interests of the bankruptcy estate and its creditors. The proposed Sale process provides an opportunity to maximize recovery for creditors and minimizes the exposure of the Debtor's estates to a myriad of issues that could arise if this case was to stay in bankruptcy through a piecemeal liquidation effort.

31.   The Debtor proposes to effectuate the Transaction via the process and procedures outlined in the Bidding Procedures (as defined below) in order to determine the highest and best bidder to enter into the Transaction.

32.   The Debtor proposes the following timeline:

| Event | Date |
|-------|------|
| Bid and Sale Procedures, Bid Protections Hearing | September 29, 2020 at 10:00 AM prevailing Central time |
| Solicitations of Competing Bids | Commenced immediately after entry of the Bidding Procedures Order |
| Notice to Contract/Lease Parties of Potential Assignment or Rejection | Commenced immediately after entry of the Bidding Procedures Order |
| Proposed Cure Schedule | On or before October 20, 2020 |
| Competing Bid Deadline | October 27, 2020, at 10:00 AM prevailing Central time |
| Auction, if necessary, and Announce Results | October 29, 2020, at 1:00 PM prevailing Central time |
| Contract/Lease and Sale Hearing Objection Deadline | October 30, 2020, at 5:00 PM prevailing Central time |
| Sale Hearing | November 3, 2020, at 10:00 AM prevailing Central time |
| Closing Deadline | November 30, 2020[5] |

---

[5] Subject to modification by agreement of Seller and Buyer, with the consent of Stone Bank.

8

## RELIEF REQUESTED

### Introduction

33.     Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, the Debtor requests that the Court, *inter alia*, (a) approve the Bidding Procedures attached as Exhibit A to the proposed Order ("Bidding Procedures Order") (b) approve the form and manner of notice of the Bidding Procedures, the Sale Hearing (as defined below), the Objection Deadline, the respective dates, times and places for an auction, if required under the Bidding Procedures, and the possible assumption and assignment, or rejection, of executory contracts and unexpired leases and rights thereunder, in the form filed and served contemporaneously with the Sale Motion, and in the form to be filed and served after completion of the Initial Hearing (defined below)[6], substantially in the form attached as Exhibit B to the proposed Bidding Procedures Order (the "Transaction Notice"), (c) approve the bid protections as set out in Section 7.5 of the Proposed APA (the "Bid Protections"**),** (d) establish procedures for objections to the Sale Motion, for determining objections in connection with the rejection, or assumption and assignment, of executory contracts and unexpired lease as part of any Successful Bid, including cure amounts and rights thereunder, and (e) set a hearing on the Sale Motion.

### Summary of Key Provisions

34.     The Debtor notes the following important aspects of the Sale Motion and Bidding Procedures[7]:

a) <u>No Sale to Insider</u>. At this time, none of the assets are contemplated to be sold to an "insider" within the meaning of 11 U.S.C. §101(31). Neither the Proposed Buyer nor the members of the Proposed Buyer are insiders of the Debtor.

---

[6] The Debtor is simultaneously filing along with the Sale Motion, a separate motion requesting an expedited hearing on the Bidding Procedures.

[7] To the extent that any terms in this Sale Motion are contradictory of the terms in the Bidding Procedures, the Bidding Procedures shall control.

EFC 4830-4950-5228
2947847-000001

b) <u>No Private Sale/Competitive Bidding</u>. At this time, the Debtor does not anticipate any private sale or elimination of competitive bidding.

c) <u>Deadlines that Effectively Limit Notice</u>. At this time, the Debtor anticipates that the only deadlines that may effectively limit notice involve the potential supplemental notice(s) to parties to executory contracts and unexpired leases, after the Bid Deadline and Auction, if any. These limited notice circumstances are unavoidable under the circumstances and mitigated by the general notice being provided to all parties in interest.

d) <u>Tax Exemption</u>. The Debtor is requesting to have the Sale declared exempt from taxes under 11 U.S.C. §1146(a). The Debtor will provide notice of the Sale Motion to the relevant taxing authorities.

e) <u>Record Retention</u>. At this time, the Debtor anticipates transferring some of the Debtor's business records relating to the ongoing operation of the Lauderdale Community Hospital as part of the Sale process, but also anticipates arranging to have adequate access to, such business records as are needed to pursue any further activity in the case after the Closing.

f) <u>Sale of Avoidance Actions</u>. At this time, the Debtor does not anticipate selling any avoidance actions under Chapter 5 of the Bankruptcy Code.

g) <u>Relief from Bankruptcy Rules 6004(h) and 6006(d)</u>. By this Sale Motion, the Debtor seeks relief from the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h) and 6006(d) for the reasons noted herein.

## **Sale Hearings**

35.     The Debtor requests that an initial hearing on this Sale Motion (the "Initial Hearing") be set on or before September 29, 2020, to approve the Bidding Procedures and the related Bid Protections.  The Debtor requests that a final hearing on the Sale Motion (the "Final Hearing") be set on or before November 3, 2020, to grant the remaining relief requested hereunder.

## **The Sale Process**

36.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. Good cause exists to submit the assets to auction to the extent reasonably possible under the circumstances.  The Debtor asserts that an auction conducted substantially in accordance with the Bidding Procedures will enable the

10

Debtor to obtain the highest or best offer for the assets under the circumstances, thereby maximizing the value of the Debtor's estate.

37.     Pursuant to the Bidding Procedures, a person or entity desiring to become a Qualified Bidder (a "Potential Bidder") must deliver the following to the Debtor, prior to or contemporaneously with submitting any Qualified Overbid, identified below:

a)   An executed Confidentiality Agreement acceptable to the Debtor; and

b)   Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to the Debtor as requested by the Debtor (and, if requested by the Debtor, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's financial capability and legal authority to close the proposed Transaction in a timely manner.

38.     A Potential Bidder that delivers the documents described in subparagraphs (a) and (b) above, and that the representative of the Debtor determines in her business judgment is financially capable of consummating the Transaction in a timely manner, will be deemed a "Qualified Bidder" and permitted to further participate in the Bidding Process if they submit a Qualified Overbid.

39.     Proposed Buyer shall be deemed to be a Qualified Bidder and its bid as set out in the Proposed APA shall be deemed the Stalking-horse Bid.  Stone Bank also shall be deemed a Qualified Bidder only in the event it submits a credit bid pursuant to the terms and conditions set out in the Bidding Procedures regarding credit bids.

40.     All other Qualified Bidders that submit a Qualified Overbid may participate in the Auction.  In order to constitute a Qualified Overbid:

a)   The bid must identify the Qualified Bidder and any current or former connections between anyone affiliated with the Qualified Bidder and Debtor, Empower,

EFC 4830-4950-5228
2947847-000001

iHealthcare, Jorge Perez or any entity in which Jorge Perez has an ownership interest (the "Perez Ownership Group").

b) The bid must include cash at closing of no less than the cash at closing specified in the Proposed APA, unless otherwise consented to by the Debtor after consultation with the Stone Bank.

c) The bid must offer a purchase price of at least $200,000 more than the Proposed Purchase Price set out in the Proposed APA of the Proposed Buyer and must contain terms and conditions no less favorable to Debtor than the terms and conditions of the Proposed APA.

d) The bid must be accompanied by an <u>executed</u> copy of an asset purchase agreement with substantially the same terms and conditions as are contained in the Proposed APA, along with a redline comparison to the Proposed APA of the Proposed Buyer identifying the additions, deletions, and changes the Qualified Bidder requires in order to close the Transaction.

e) The bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Transaction in a timely manner, including adequate assurance of future performance as to the Assigned Contracts and Leases (defined below), as determined by the Debtor in consultation with Stone Bank.

f) The bid cannot be conditioned upon the Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

g) The bid must expressly acknowledge and represent that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and operation of the Debtor and the Transaction prior to making the bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets and operation of the Debtor in making the bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the operation or assets of the Debtor or the Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the purchase agreement ultimately accepted and executed by the Debtor and approved by this Court, and (iv) has authority to make the Bid, execute any documents to close on the Transaction, and proceed to closing on the Transaction.

h) The bid must include a cashier's check or other form of immediately available funds representing a good faith deposit (the "Deposit") in the amount of not less than five percent (5%) of the aggregate proposed purchase price in the Overbid, payable to Chicago Title Insurance Company, as escrow agent (the "Escrow Agent"), which Deposit shall be held by the Escrow Agent in a segregated escrow account and subsequently disbursed by the Escrow Agent or returned to the Qualified Bidder in

12

accordance with the Bidding Procedures, and expressly acknowledge that, if the Court enters an order authorizing a Sale to the Qualified Bidder, such Deposit shall be used, without further authorization or action by such Qualified Bidder, to fund a portion of the purchase price to acquire the Acquired Assets.

i) The bid must expressly acknowledge that the bid is irrevocable until the earlier of the closing or thirty (30) days after the entry of the Sale Order.

j) The above bid material must be received by the Debtor's counsel, Baker Donelson Bearman Caldwell & Berkowitz, PC, Attn: Frank Childress, 165 Madison Avenue, Suite 2000, Memphis, TN 38103, by the Bid Deadline **(October 27, 2020, at 10:00 AM prevailing Central time)**.

41.    If a Qualified Overbid is submitted for the Acquired Assets in accordance with the Bidding Procedures, the Debtor will conduct **the Auction on October 29, 2020, at 1:00 PM prevailing Central time, at the offices of Baker Donelson Bearman Caldwell & Berkowitz, PC, 165 Madison Avenue, Suite 2000, Memphis, TN**, or at such later time as determined by the Debtor, who will notify all Qualified Bidders, Stone Bank, and the United States Trustee (collectively, the "Auction Participants").  Due to concerns related to COVID-19, the Auction may be conducted via Zoom or similar electronic means.

42.    Only the representative of the Debtor, Stone Bank, the Proposed Buyer, any Qualified Bidders, and their respective counsel and advisors, and counsel for the United States Trustee, may attend or participate in the Auction.

43.    In order to revise any Qualified Bid at the Auction, all Qualified Bidders who want to participate must attend the Auction in person or through electronic means. The Debtor, in consultation with Stone Bank, shall determine which one of the Qualified Overbid is the opening bid (the "Opening Bid").

44.    After the Opening Bid, all bids submitted at the Auction must exceed the amount of the prior offer by a minimum of $50,000.00.  Each bid must consist solely of cash consideration unless otherwise authorized by the Debtor after consultation with Stone Bank.

13

45.     Bidding at the Auction shall continue until the highest and best Qualified Bid (the "Successful Bid") is determined by the Debtor, after consultation with Stone Bank.

46.     The representative of the Debtor will have the right to adopt such other rules for the Auction which she believes in her business judgment will promote the goals of the Auction to obtain the highest and best price for the Acquired Assets.

47.     At the end of any Auction, the Qualified Bidder with the Successful Bid will be identified (the "Successful Bidder"), and the Debtor will submit the Successful Bid to the Court for approval.

48.     In the event of an Auction, the Debtor will also ask the Court to approve the next highest and best bid from a Qualified Bidder (the "Back-up Bidder") to be the back-up bid (the "Back-up Bid") in the event the Successful Bidder fails to consummate the Sale of the Acquired Assets.  If the Successful Bidder fails to consummate the Sale, the Debtor may consummate the Sale with the Back-up Bidder without further hearing or approval of the Court and the Back-up Bidder shall be obligated to Close. In addition, the Debtor's estate shall be entitled to keep the Deposit from the Successful Bidder as liquidated damages, subject to the secured claim of Stone Bank, for the failure of the Successful Bidder to close.

49.     The Debtor believes the Bidding Procedures provide an appropriate framework for obtaining offers for the purchase of the Acquired Assets and will enable the Debtor to review, analyze and compare all bids received to determine which bid (or bids) is in the best interests of the Debtor's estate and its creditors. Therefore, the Debtor respectfully requests that this Court approve the Bidding Procedures and authorize the Debtor to take any and all actions necessary or appropriate to implement the Bidding Procedures.

## **Credit Bid**

50.     Section 363(k) of the Bankruptcy Code states:

EFC 4830-4950-5228
2947847-000001

"At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of the property."

51.     The Debtor acknowledges that Stone Bank shall be entitled to credit bid at the Auction.  If and only to the extent that any other creditor may claim a security interest in or lien on the assets to be sold at Auction, such creditor shall be permitted to exercise its credit bid rights under 11 U.S.C. § 363(k) only if such creditor's bid includes cash in an amount (a) necessary to pay the secured claims of Stone Bank in full, or (b) otherwise satisfactory to Stone Bank.

### Bid Protections and Break-Up Fee

52.     The Proposed APA includes certain protections for the Proposed Buyer in consideration of its agreement to negotiate and submit the Stalking Horse Bid.

53.     The Debtor seeks the approval of the following Bid Protections for the Proposed Buyer:

a) The initial bid over the cash portion of the Purchase Price described in Section 2.1 (a "Qualified Overbid") of the Proposed APA must provide for an aggregate cash consideration to Debtor of at least $200,000.00 more than the cash portion of the Purchase Price described in Section 2.3 of the Proposed APA, and must contain terms and conditions no less favorable to Debtor than the terms and conditions of the Proposed APA;

b) If, after the condition of the Proposed Buyer's Financing has been timely satisfied, the Court approves and Debtor consummates an alternative transaction sale of the Acquired Assets for a higher cash portion of the Purchase Price to some Person other than Proposed Buyer (an "Alternative Transaction"), Debtor shall be required to return the Deposit and shall be obligated to pay Proposed Buyer a break-up fee equal to $100,000.00 (the "Break-Up Fee") and the Expenses capped at $50,000.00. The Break-Up Fee and Expenses shall be an allowed administrative expense under Section 503(b) of the Bankruptcy Code, shall be paid solely out of the gross proceeds of the Alternative Transaction, and shall be payable on the second (2nd) business day following the date that an Alternative Transaction is closed.

EFC 4830-4950-5228
2947847-000001

**Procedure to Address Assumption and Assignment, or Rejection, of Unexpired Leases and
Executory Contracts**

54.     The Proposed APA includes provisions (Sections 3.2 and 3.3) whereby the
Proposed Buyer may request the Debtor to assume and assign certain executory contracts and
unexpired leases (the "Assigned Contracts and Leases").   The Debtor also anticipates that, in the
event of an Auction, a Successful Bid at the Auction may include provisions requesting that the
Debtor assume and assign, or reject, certain unexpired leases or executory contracts, which may
or may not be the same as those requested by the Proposed Buyer.

55.     In addition, the Proposed Buyer may add or delete other proposed Acquired
Assets at or before the Auction.  The Debtor also anticipates that, in the event of an Auction, a
Successful Bid at the Auction may add or delete Acquired Assets not specified in the Proposed
APA. However, the Debtor does not know exactly which tangible assets may be included or
excluded at this time.

56.     Accordingly, contemporaneous with filing this Sale Motion, the Debtor filed and
served a Notice on the full matrix of creditors and other parties in interest, including but not
limited to all non-debtor parties to unexpired leases and executory contracts. The Notice advised
these parties that their unexpired leases and executory contracts <u>may</u> be assumed and assigned,
or rejected, at the Sale Hearing, and that various assets of the Debtor may be abandoned.

57.     In addition, as described in more detail below, the Debtor is proposing to include
in a notice to be filed (the "Transaction Notice") and a separate notice to all non-debtor parties to
unexpired leases and executory contracts of the potential assumption and assignment, or
rejection, of unexpired leases and executory contracts, including schedules detailing the Debtor's

calculation of the amount, if any, necessary to cure any default or compensate for any actual pecuniary loss in accordance with Section 365(b)(1)(A) and (B) of the Bankruptcy Code.

58.     Finally, as soon as the Debtor determines the Successful Bid and the Back-up Bid, the Debtor will file a Supplemental Notice with the Court and deliver it electronically to all non-debtor parties to unexpired leases and executory contracts who request such notice and provide an appropriate address for electronic delivery. The Supplemental Notice will, among other things, identify the unexpired leases and executory contracts that the Successful Bidder is proposing to have the Debtor assume and assign, or reject.

**Sale Notice**

59.     Bankruptcy Rule 2002(a) provides, in relevant part, that all creditors must be given at least 21 days' notice by mail of a proposed use, sale or lease of property of the estate other than in the ordinary course of business unless the Court for cause shortens the time or directs another method of giving notice. Further, Bankruptcy Rule 2002(c) sets forth that the content of such notices must include the time and place of any sale, the terms and conditions of such sale, and the time fixed for filing objections.

60.     In accordance with Bankruptcy Rule 6006(c), the Debtor must also provide notice of: (i) the potential assumption and assignment, or rejection, of executory contracts and unexpired leases, (ii) the amount that the Successful Bidder may pay to cure all defaults and compensate for pecuniary damages, if any, under executory contracts and unexpired leases that the Debtor proposes to assume and assign (collectively, the "Cure Amounts")[8], and (iii) the deadline to file objections to such assumption and assignment, Cure Amounts, the existence of any defaults, and information about adequate assurance of future performance.

---

[8] Referenced in the Proposed APA as Cure Costs.

EFC 4830-4950-5228
2947847-000001

61.     The Transaction Notice: (a) contains the type of information required under Bankruptcy Rule 2002 and 6006 that is currently known to the Debtor, (b) includes information concerning the Bidding Procedures, and (c) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the Bidding Procedures, (ii) the Auction, (iii) the deadline to object to this Sale Motion, (iv) the Final Hearing, (v) the entry of the initial order on this Sale Motion, (vi) the potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (vii) the amount proposed to satisfy the Cure Amounts, and (viii) the deadline to file objections to such assumption and assignment, applicable Cure Amounts, the existence of any defaults, and adequate assurance of future performance.

62.     The Debtor proposes to serve the Transaction Notice within three days after the Court enters the Bidding Procedures Order, by (a) first class United States mail, postage prepaid on (i) the parties identified on the Creditor Matrix in this Case at the addresses set forth therein, (ii) known holders of liens and security interests in the Assets, (iii) all known taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service, (iv) all parties who have filed a written request for notice in the Case pursuant to Bankruptcy Rule 2002, (v) the patient care ombudsman, (vi) all other known parties who have expressed an interest in acquiring the Assets, and (vii) all counterparties to executory contracts and unexpired leases that may be assumed and assigned, or rejected, by the Debtor pursuant to Bankruptcy Code § 365 and that any Potential Bidder may desire to be assigned by the Debtor (the "Desired 365 Contracts"); and (b) the Court's electronic filing system on those parties receiving electronic notice by such system. Designation as a Desired 365 Contract in any pleading, notice, or agreement shall not be deemed to be an admission by the Debtor that such Desired 365 Contract is an "executory

contract" or "unexpired lease" for purposes of Section 365 of the Bankruptcy Code, and the Debtor reserve all rights in connection with same.

63.     Service of the Transaction Notice as proposed herein is proper and sufficient notice of, among other things, the entry of the Bidding Procedures Order, the Bidding Procedures, the Auction (if required under the Bidding Procedures), the Sale Hearing, the Sale Motion, the proposed Transaction(s), including the sale of the Debtor's estate's right, title and interest in, to and under the Assets free and clear of any and all liens, claims, encumbrances, and other interests, and the procedure for objecting thereto, the possible assumption and assignment of the Desired 365 Contracts and rights thereunder, the Cure Amounts, and the procedures for objecting thereto.

64.     Accordingly, the Debtor requests that this Court approve the form and content of the Transaction Notice.

**Objections and Related Procedures**

65.     The Debtor requests that the following procedures be implemented with respect to the notices discussed herein and relief related thereto:

a)   Objections, if any, to all or any part of the relief requested in the Sale Motion shall be filed on the docket of the Bankruptcy Court, 200 Jefferson Ave., Suite 500, Memphis, TN 38103, and served such that each objection is actually received by the following parties on or before the relevant objection deadline specified above: (a) counsel for the Debtor at Baker Donelson Bearman Caldwell & Berkowitz, PC, Attn: Frank Childress, 165 Madison Ave., Suite 2000, Memphis, TN 38103, fchildress@bakerdonelson.com, and to the representative of the Debtor, Marianna Williams, Ashley & Arnold, 322 N. Church Ave., Dyersburg, TN 38024, molly@ashleyarnold.com (b) counsel to Stone Bank at Spragins, Barnett & Cobb, PLC, Attn: Jerry P. Spore and Jonathan Steen, 312 E. Lafayette Street, Jackson, TN 38302-2004, jpspore@spraginslaw.com, and jsteen@spraginslaw.com; (c) the United States Trustee's Office, Attn. Carrie Ann Rohrscheib, Trial Attorney, Office of the United States Trustee, 200 Jefferson Ave., Suite 400, Memphis, TN  38103, Carrie.A.Rohrscheib@usdoj.gov.

b)   The Debtor may amend the Transaction Notice by sending a new or amended Transaction Notice at any time prior to the Sale Hearing solely to the counterparties

affected. Any party to an unexpired lease or executory contract that desires to receive electronic notice of any amendment to the Transaction Notice must deliver a written request for such electronic notice, including an appropriate electronic address, to counsel for the Debtor no later than **Bid Deadline**.

c)   Any person failing to timely file an objection to any or all of the relief requested in this Motion shall be barred from objecting to any or all of the relief requested in this Motion, including the Sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests, and will be deemed to consent to the Transaction, including the Sale of the Assets free and clear of any and all liens, claims, encumbrances, and other interests, the assumption, assumption and assignment, or rejection of any executory contracts and unexpired leases, and the abandonment of any assets.

d)   Any person failing to timely file an objection to any Cure Amounts set forth in this Transaction Notice or the Cure Schedule or the proposed assumption and assignment of the Debtor's right, title and interest in, to and under Desired 365 Contracts shall be barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the Desired 365 Contract as of the date of assumption) against the Debtor, its estate, or any Successful Bidder with respect to the Desired 365 Contract arising prior to assumption and assignment of the Debtor's right, title and interest in, to and under the Desired 365 Contract and will be deemed to consent to the proposed assumption and assignment of the Desired 365 Contract and rights thereunder as provided by such Transaction.

e)   Where any party files a timely objection to the maximum Cure Amount set forth in the Transaction Notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by the Court. All other objections to the proposed assumption and assignment of the Debtor's right, title and interest in, to and under the Desired 365 Contracts will be heard at the Sale Hearing.

66.     The above procedures, in conjunction with the Transaction Notice, are fair, reasonable, and appropriate to provide a framework for the Court to consider the Sale Motion and the relief requested thereunder. The Debtor respectfully requests that the Court approve the foregoing notice and objection procedures.

EFC 4830-4950-5228
2947847-000001

## Basis for Relief

**A. The Sale and the Bidding Procedures are a Proper Exercise of the Debtor's Business Judgment and will Maximize the Value of the Acquired Assets for the Benefit of the Debtor's Estate and Creditors.**

67.     Section 363(b)(1) of the Bankruptcy Code provides: "The Trustee[9], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

68.     Entry of the Sale Order approving the final Sale of the Acquired Assets at the conclusion of the Sale Hearing is authorized and appropriate under the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

69.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *In re Eagle Picher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

70.     The key consideration is the Court's finding that a good business reason exists for the sale.  *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *see also*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v.*

---

[9] The Debtor in Possession is afforded the powers of the Trustee under Section 1107 of the Bankruptcy Code.

EFC 4830-4950-5228
2947847-000001

*Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153

(Bankr. D. Del. 1999).

> Whether the proffered business justification is sufficient depends on the case. As
> the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient
> factors pertaining to the proceeding and, accordingly, act to further the diverse
> interests of the debtor, creditors and equity holders, alike. He might, for example,
> look to such relevant factors as the proportionate value of the assets of the estate
> as a whole, the amount of elapsed time since the filing, the likelihood that a plan
> of reorganization will be proposed and confirmed in the near future, the effect of
> the proposed disposition on future plans of reorganization, the proceeds to be
> obtained from the disposition vis-a-vis any appraisals of the property, which of
> the alternatives of use, sale or lease the proposal envisions and, most importantly
> perhaps, whether the asset is increasing or decreasing in value. This list is not
> intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Walter*, 83 B.R. 14, 19-20 (9th Cir. Bankr. 1988), citing *In re Lionel Corporation*, 722 F.2d

1063, 1070-71 (2nd Cir. 1983).

71.    Once the Debtor articulates a valid business justification, "[t]he business

judgment rule 'is a presumption that in making a business decision the directors of a corporation

acted on an informed basis, in good faith and in the honest belief that the action taken was in the

best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see*

*also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bonier. S.D.N.Y. 1992); *In re Johns-*

*Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness

attaches to a debtor's management decisions").

72.    In light of circumstances that precipitated the commencement of this chapter 11

case[10], the Debtor, in its business judgment, believes that a prompt sale of the Acquired Assets,

pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Acquired

Assets for the benefit of the Debtor's creditors and Bankruptcy Estate. Several sound business

reasons support the Debtor's position.

---

[10] *See* Williams Declaration.

22

73.     Based on the results of analysis of the Debtor's ongoing and future business prospects and the ownership status of the Debtor, it is asserted that a Sale as a going concern in accordance with the process set forth in the Bidding Procedures is the best method to maximize recoveries and ensure that the value of the Debtor's assets is maintained for the benefit of its creditors and estate.   Maximization of asset value is a sound business purpose, warranting authorization of the Sale.

74.     The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer for the Acquired Assets.   The Bidding Procedures provide potential bidders an opportunity to perform due diligence.   Competing bidders will have the opportunity to bid at the Auction (if they become a Qualified Bidder, as defined in the Bidding Procedures), thus ensuring that the Sale of the Acquired Assets will be affected through an arm's-length transaction.   Accordingly, the proposed auction procedure will allow the highest and best bidder to purchase the Acquired Assets, thereby maximizing the return to the Debtor's estate.

75.     The Debtor believes that the Bidding Procedures for the Auction are commercially reasonable and are in the best interest of the Debtor, its estate and creditors and will maximize the value obtained from the Sale of the Acquired Assets.   The Sale of the Acquired Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Acquired Assets.   An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith.   *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986).   Consequently, the fairness and reasonableness of the consideration to be received by the

EFC 4830-4950-5228
2947847-000001

Debtor will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

76.    In addition, all creditors and parties-in-interest will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth herein.  Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's major creditor constituencies, those parties most interested in these chapter 11 cases, those parties potentially interested in bidding on the Acquired Assets, and others whose interests are potentially implicated by a proposed sale. Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtor and its creditors.

77.    Finally, the Debtor asserts that the proposed Sale of the Lauderdale Community Hospital as a going concern will provide a greater return to the Debtor's estate and its creditors than the liquidation of the Debtor's assets.  It also provides the opportunity for continued employment in the community by the continued operation of this rural hospital providing necessary services and care for the Lauderdale County area.  For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt Sale of the Acquired Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**B.  This Court Should Approve the Sale Free and Clear of all Liens, Claims, and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code.**

78.    The Debtor also requests that the Sale Order provide that the Sale of the Acquired Assets is free and clear of any interest held by any third party in any of the assets to be sold. Specifically, it is contemplated that upon the closing, the Proposed Buyer (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) will take

24

title to and possession of the Acquired Assets, free and clear of all liens, claims, interests and encumbrances, except as otherwise provided in the Stalking Horse Bid.

79.    Section 363(f) of the Bankruptcy Code authorizes the sale of property under section 363(b) of the Bankruptcy Code to be free and clear of interests in such property held by an entity if:

a)  Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

b)  Such entity consents;

c)  Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d)  Such interest is in bona fide dispute; or

e)  Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

80.    Stone Bank holds first priority pre and post-petition liens upon substantially all of the Debtor's assets not otherwise subject to a validly perfected unavoidable lien of a third party other than Stone Bank. These liens will attach to the sales proceeds with the same validity and priority as exist under state law pursuant to section 363(e) of the Bankruptcy Code.

81.    To the extent any other third party asserts a lien on the Debtor's assets, that lien is disputed.

82.    The Sale of the Acquired Assets pursuant to the Bidding Procedures will satisfy section 363(f) of the Bankruptcy Code because any entities holding liens, claims, interests or encumbrances against the Acquired Assets will have received notice of the Sale.  All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the Sale of the Acquired Assets should be deemed to have

25

consented. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As such, the Sale of the Acquired Assets may be free and clear of all liens, claims, interests and encumbrances except any liabilities expressly assumed by the Proposed Buyer (or other Successful Bidders)), thus satisfying section 363(f)(2) of the Bankruptcy Code.

83.     Moreover, a Sale of the Acquired Assets free and clear may proceed pursuant to section 363(f) of the Bankruptcy Code because creditors with an interest in the Acquired Assets can be compelled to accept money satisfaction of their claims pursuant to section 363(f)(5) of the Bankruptcy Code. *See Scherer v. Fed. Nat'l Mortgage Assoc. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993) (holding that pursuant to section 363(f)(5) of the Bankruptcy Code courts may authorize sales free and clear of a secured creditor's lien if such creditor's interest could be crammed down pursuant to section 1129(b)(2) of the Bankruptcy Code); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (same). Therefore, this Court may authorize the Sale pursuant to section 363(f)(5) of the Bankruptcy Code.

EFC 4830-4950-5228
2947847-000001

84.     The Debtor also believes that other provisions of section 363(f) of the Bankruptcy Code may be applicable to and would permit the Sale of the Acquired Assets.  Thus, the Sale of the Acquired Assets is appropriately free and clear of all liens, claims, interests or encumbrances pursuant to section 363(f) of the Bankruptcy Code.

### C. The Proposed Buyer (or such other Successful Bidder(s)) Should be Entitled to the Protections of 363(m) of the Bankruptcy Code.

85.     The Debtor seeks the protections afforded under section 363(m) of the Bankruptcy Code, which provide, in pertinent part:

> (m)  The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. 363(m).

86.     The Debtor submits that the Sale of the Acquired Assets to the Proposed Buyer (or such Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) warrants a finding that the Acquired Assets were acquired in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor has and will continue to aggressively market the Sale of the Acquired Assets.  Any parties who have expressed any meaningful interest in the acquiring the business and assets of will be given notice of the Sale.  No subjectivity in evaluating bids will be at issue.  The highest bidder will purchase the Acquired Assets, subject to the terms of the Bidding Procedures.

87.     Accordingly, the Sale Order will include a provision that the Proposed Buyer (or such Successful Bidder(s) for the Acquired Assets) is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor asserts that providing such

protection will ensure that the maximum price will be received by the Debtor for the Acquired

Assets and closing of the Sale will occur promptly.

**D. Assumption and Assignment of the Assigned Contracts and Leases is Warranted Under Section 365 of the Bankruptcy Code**

88.    Section 365(a) of the Bankruptcy Code provides as follows:

Except as provided in section 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

89.    Section 365 of the Bankruptcy Code authorizes the assumption or rejection of any

executory contract or unexpired lease of a debtor except for open contracts of commodity

brokers that are covered by Bankruptcy Code sections 765 and 766.

90.    The Bankruptcy Code provides little guidance as to the standards to be applied by

a court in approving an assumption or rejection.  Drawing on pre-Code law, the predominant test

is described as the "business judgment" rule or business judgment test.  *In re Kong*, 162 B.R. 86,

94 (Bankr. E.D.N.Y. 1993*); In re Minges*, 602 F.2d 38 (2nd Cir. 1979); *In re Child World*, 142

B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Stable Mews Assocs.*, 41 B.R. 594 (Bankr. S.D.N.Y.

1984).   The business judgment test is the same test applied to judicial review of corporate

decisions outside bankruptcy.  *Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D. Ill. 1986).  This test

analyzes the impact that continued performance under the executory contract or unexpired lease

will have on the estate.  Assumption or rejection of the contract or lease will be approved upon a

mere showing that the action will benefit the estate.  *In re Chestnut Ridge Plaza Assocs., L.P.*,

156 B.R. 477 (Bankr. W.D. Pa. 1993) (test is best interest of the estate); *Bezanson v.

Metropolitan Ins. & Annuity Co.*, 952 F.2d 1 (1st Cir. 1991).

28

91.     In addition to the business judgment test, section 365(b)(1) of the Bankruptcy Code further provides that the debtor may not assume an executory contract or unexpired lease unless, at the time of assumption, the debtor: (a) cures defaults; (b) compensates the non-debtor party to the lease or contract for any actual pecuniary loss resulting from defaults; and (c) provides adequate assurance of future performance. *See* 11 U.S.C § 365(b)(1).

92.     In the present case, the Debtor may seek to assume the Assigned Contracts and Leases and assign the Assigned Contracts and Leases to the Proposed Buyer (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures).  Section 365(f) of the Bankruptcy Code addresses assumption and assignment of executory contracts and unexpired leases and provides, in pertinent part:

> 1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .
>
> 2) The trustee may assign an executory contract or unexpired lease of the debtor only if-
>
>> a. the trustee assumes such contract or lease in accordance with the provisions of this section; and
>>
>> b. adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(1)-(2).

93.     Section 365(f) of the Bankruptcy Code provides that the assignment of a properly assumed contract or lease is to be permitted by the Court only if the debtor has assumed the contract or lease in compliance with all of the terms of section 365 of the Bankruptcy Code and if the debtor provides the other party to the contract or lease with adequate assurance of future performance by the assignee of the contract or lease.  11 U.S.C. § 365(f)(2).   The words

EFC 4830-4950-5228
2947847-000001

"adequate assurance of future performance" must be given a "practical a pragmatic construction" in "light of the proposed assumption." *In re Fleming Cos.*, 499 F.3d 300 (3d Cir. 2007) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 120, n.10 (3d Cir. 2001); *see also Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (same); *In re Nalco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

94.    As part of this Motion, the Debtor seeks authority to assume and assign the identified Assigned Contracts and Leases to the Proposed Buyer (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures).  Any assumption and assignment of the Assigned Contracts and Leases will be subject to any applicable provisions of the Bankruptcy Code.  The proposed terms and conditions set forth herein and in the Bidding Procedures are designed to ensure that the assignees, if any, are financially able and prepared to undertake all of the obligations of the Assigned Contracts and Leases.  In addition, the availability of the Sale Hearing gives this Court and other parties in interest an appropriate opportunity to evaluate any assignment issues.

95.    The Debtor asserts that under the circumstances, the Assigned Contracts and Leases can be properly assumed in compliance with section 365 of the Bankruptcy Code.  First, the assumption of the Assigned Contracts and Leases by the Debtor complies with the requirements of section 365 because assumption clearly satisfies the "business judgment test".  The Debtor's satisfaction of the business judgment test is demonstrated by the benefit to the

Debtor's estate which will accrue as a result of the Debtor's ability to close the Sale on the terms to be set forth in the Proposed APA and from the savings realized as a result of: (a) the Proposed Buyer's assumption of the Debtor's obligations under the Assigned Contracts and Leases, as provided in the Proposed APA; and (b) the avoidance of a potential rejection damages claims and possible administrative expense claims.

96.     Second, all monetary defaults under the Assigned Contracts and Leases will be cured by payment of the Cure Costs at the time of assumption.

97.     Third, it is contemplated that the Proposed Buyer (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) will be capable of satisfying the adequate assurance conditions of sections 365(b)(i)(c) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts and Leases.  Adequate assurance of future performance is to be determined on a case by case basis to ensure that the other party to the contact or lease obtains the benefit of the bargain for what was contracted.  *Chera v. 991 Blvd. Realty Corp. (In re National Shoes, Inc.)*, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982); *see also In re Bygaph*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("Congress intended that the words 'adequate assurance' be given a practical, pragmatic construction, and is to be determined under the facts of each particular case").  The Debtor submits, and will demonstrate at the Sale Hearing, that there are adequate business justifications for the assumption and assignment of the Assigned Contracts and Leases and that all requirements to assumption and assignment, including adequate assurance of future performance by the Proposed Buyer or any Successful Bidder(s), have been met.

## Waiver of 14-Day Finality for Orders

98.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property...is stayed until the expiration of fourteen (14) days after entry of the order,

unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d).

99.     In light of the current circumstances and financial condition of the Debtor and the Bankruptcy Estate, the Debtor asserts that in order to maximize value and preserve jobs, the sale of the Acquired Assets should be consummated as soon as practicable. Accordingly, the Debtor requests that the Sale Order be effective immediately upon entry of such order and that the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

**WHEREFORE**, the Debtor respectfully requests this Court enter an order: (i) scheduling a hearing on this Sale Motion to consider the approval of the Bidding Procedures; (ii) holding a hearing for final approval of the proposed Sale of the Acquired Assets at the Sale Hearing; (iii) authorizing the Debtor to sell the Acquired Assets other than in the ordinary course, free and clear of liens, interests and other claims; (iv) approving the assumption and assignment, or rejection, of certain executory contracts and unexpired leases; (v) waiving the 14-day stay periods set forth in Fed. R. Bankr. P. 6004(h) and 6006(d); and (vi) granting such other and

EFC 4830-4950-5228
2947847-000001

further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

*/s/ E. Franklin Childress, Jr.*
E. Franklin Childress, Jr. (TNB # 007040)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-8214
Facsimile: (901) 577-0863
Email: rhagan@bakerdonelson.com
fchildress@bakerdonelson.com

*Attorneys for CAH Acquisition Company 11, LLC*

33

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2020, a copy of the foregoing electronically filed Motion was served on the parties listed below by US Mail or by FedEx, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

| | |
|---|---|
| U.S. Trustee<br>Office of the U.S. Trustee<br>One Memphis Place<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103<br><br>carrie.a.rohrscheib@usdoj.gov | D. Michael Dunavant<br>U.S. Attorney's Office<br>Bankruptcy Division<br>167 North Main Street, Ste 800<br>Memphis, TN 38103<br><br>Stuart.Canale@usdoj.gov<br>Monica.Simmons@usdoj.gov |
| Stone Bank<br>c/o Jerry P. Spore<br>SPRAGINS BARNETT & COBB, PLC<br>312 East Lafayette St.<br>Jackson, TN 38302-2004<br>Email: jpspore@spraginslaw.com | State of Tennessee<br>TN Department of Revenue<br>PO Box 20207<br>Nashville TN 37202-0207 |
| Charles C. Exum<br>RAINEY KIZER BUTLER REVIERE & BELL<br>P. O. Box 1147<br>Jackson, TN 38301<br>Email: cexum@raineykizer.com | State of Tennessee<br>Department of Labor & Workforce Development<br>PO Box 20207<br>Nashville TN 37202-0207 |
| Frank M Smith<br>FMS LAWYER PI<br>9900 Stirling Rd Ste 226<br>Cooper City, FL 33024-8066<br>Email: frank.smith@fmslawyer.com | Cardinal Health #4414, as agent<br>c/o Erin Gapinski, Senior Counsel<br>7000 Cardinal Place<br>Dublin, OH 43017 |
| Lauderdale County Chancery Court<br>100 Court Square<br>P.O. Box 265<br>Ripley, TN 38063 | Paul Nusbaum and Steve White<br>c/o James E. Bailey III<br>BUTLER SNOW LLP<br>6075 Poplar Avenue, Ste 500<br>Memphis, TN 38119<br>jeb.bailey@butlersnow.com |
| HMC/CAH Note Acquisition, LLC<br>3130 Broadway<br>Kansas City, MO 64111 | SPG Advance, LLC<br>c/o Lazer Preizler - Burech Weinstock<br>5306 New Utrecht Ave<br>Brooklyn, NY 11219 |
| SPG Advance, LLC<br>c/o Steven Berkovitch, Esq.<br>and Ariel Bouskila, Esq.<br>Berkovitch & Bouskila, PLLC<br>1330 6th Ave., Suite 600B<br>New York, NY 10019<br>Legal@BBLawpllc.com | GEL Funding, LLC<br>5308 13th Avenue, Suite 324<br>Brooklyn, NY 11219 |

EFC 4830-4950-5228
2947847-000001

| | |
|---|---|
| GEL Funding, LLC<br>c/o Steven Berkovitch, Esq.<br>and Ariel Bouskila, Esq.<br>Berkovitch & Bouskila, PLLC<br>1330 6th Ave., Suite 600B<br>New York, NY 10019<br>Legal@BBLawpllc.com | Merchant Advance Card Investors I, L.P.<br>c/o Kenneth Sussmane, Mccue, Sussmane<br>& Zapfel, P.C.<br>521 Fifth Avenue, 28th Floor<br>New York, NY 10175 |
| Merchant Advance Express Inc.<br>c/o Merchant Advance Express Inc.<br>360 RXR Plaza<br>Uniondale, NY 11556 | Merchant Advance Express Inc<br>c/o Thomas Telesca, Esq.<br>Ruskin Moscou Faltischek PC<br>1425 RXR Plaza E. Tower 18 Fl.<br>Uniondale, NY 11556 |
| Merchant Advance Funding LLC<br>c/o Ronald Philips<br>6 Stillwater Ln.<br>Weston, CT 06883 | Merchant Advance Now, LLC<br>c/o Louis Peragine<br>10 Ithaca St<br>Lindenhurst, NY 11757 |
| Merchant Advance Servicing Inc.<br>132 West 36th Street<br>3rd Floor<br>New York, NY 10018 | Merchant Advance<br>c/o Joe Lieberman, Esq.<br>815 Central Avenue<br>Lawrence, NY 11559<br>Via fax: (516) 308-9383 |
| APP Group International, LLC<br>c/o URS Agents Inc.<br>One Commerce Plaza<br>99 Washington Ave, Suite 805A<br>Albany, NY 12210 | APP Group International, LLC<br>c/o Law Office of Jason Gang PLLC<br>1245 Hewlett Plz., Unit 478<br>Hewlett, NY 11557-4021<br>jason@jasongang.com |
| GTR Source LLC<br>111 John Street<br>Suite 1210<br>New York, NY 10038 | GTR Source LLC<br>c/o Isaac H. Greenfield, Esq.<br>32 Court Street, Suite 205<br>Brooklyn, NY 11201<br>info@greenfieldlawpllc.com |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101 | CARDINAL HEALTH NUCLEAR PHARM<br>PO BOX 70609<br>CHICAGO, IL 60673-0609 |
| AMERICAN ESOTERIC LAB (AEL)<br>PO BOX 144225<br>AUSTIN, TX 78714-4225 | Emergency Coverage Corp<br>Chicago, IL |
| DANIEL BERCU<br>505 CHURCH STREET, APT #2402<br>NASHVILLE, TN 37219 | FARNAM STREET FINANCIAL<br>240 PONDVIEW PLAZA<br>HOPKINS, MN 55343<br>Phillip.ashfield@stinson.com |
| ERX<br>9724 KINGSTON PIKE, SUITE 1300<br>KNOXVILLE, TN 37922 | HERC<br>21900 EAST 96TH STREET<br>BROKEN ARROW, OK 74014 |
| FIRST FINANCIAL CORPORATE<br>DEPT 2067<br>PO BOX 87618<br>CHICAGO, IL 60680 | LIFEBLOOD/MIDSOUTH BLOOD<br>PO BOX 53022<br>Phoenix, AZ 85072 |
| LAUDERDALE COUNTY ASSESSOR<br>100 COURT SQUARE<br>RIPLEY, TN 38063 | MISSOURI NETWORK ALLIANCE<br>2005 W. BROADWAY, BLDG A, SUITE 215<br>COLUMBIA, MO 65203 |

| | |
|---|---|
| MEDLINE<br>DEPT 1080<br>PO BOX 121080<br>DALLAS, TX 75312 | NORTEK MEDICAL STAFFING<br>2313 TIMBER SHADOWS, STE 200<br>KINGWOOD, TX 77339 |
| NEXTGEN HEALTHCARE<br>PO BOX 511449<br>SUITE 200<br>LOS ANGELES, CA 90051 | RAYMOND HOWARD<br>250 MCDOW LANE<br>COVINGTON, TN 38019 |
| PEDRO GALVEZ<br>121 CHERRY BRANCH LANE<br>OLD HICKORY, TN 37138 | SHARED MEDICAL<br>209 LIMESTONE PASS<br>COTTAGE GROVE, WI 53527 |
| RIPLEY CITY RECORDER<br>110 SOUTH WASHINGTON<br>RIPLEY, TN 38063 | TRUCODE<br>150 BURFORD HOLLOW, SUITE A<br>ALPHARETTA, GA 30022 |
| SYSMEX<br>28241 NETWORK PLACE<br>CHICAGO, IL 60673-1282 | JILL D. OLSEN, ATTORNEY<br>THE OLSEN LAW FIRM, LLC<br>118 N. CONISTOR LN., SUITE B #290<br>LIBERTY, MO   64068 |
| Charles C. Exum<br>RAINEY KIZER BUTLER REVIERE & BELL<br>P. O. Box 1147<br>Jackson, TN 38301<br>Email: cexum@raineykizer.com | Frank M Smith<br>FMS LAWYER PI<br>9900 Stirling Rd Ste 226<br>Cooper City, FL 33024-8066<br>Email: frank.smith@fmslawyer.com |
| **Alex M. Axar, II,** *Secretary of U.S. Department of Health and Human Services*<br>U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201 | **Seema Verma**<br>Administrator of Centers for Medicare & Medicaid Svcs<br>200 Independence Avenue, S.W.<br>Washington, DC 20201 |
| **The Matrix filed in this case** | |

 */s/ E. Franklin Childress, Jr.*
E. Franklin Childress, Jr.

EFC 4830-4950-5228
2947847-000001